**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **ITHAKI GAS SHIPPING COMPANY,** | § | |
| **ELETSON HOLDINGS, INC, ELETSON** | § | **CIVIL ACTION NO.** |
| **CORPORATION, ELETSON GAS LLC,** | § | |
| | § | **25-MC-_____** |
| **Plaintiffs,** | § | |
| | § | **ADMIRALTY RULE 9(h)** |
| | § | |
| **M/V ITHACKI (IMO 9788966),** | § | |
| **her engines, tackle, equipment,** | § | |
| **and appurtenances,** *in rem*, | § | |
| | § | |
| **and** | § | |
| | § | |
| **FAMILY UNITY TRUST COMPANY,** | § | |
| **GLAFKOS TRUST COMPANY,** | § | |
| **LASSIA INVESTMENT COMPANY,** | § | |
| **ELAFONISSOS SHIPPING** | § | |
| **CORPORATION, KEROS SHIPPING** | § | |
| **CORPORATION,** | § | |
| **LASKARINA KARASTAMATI,** | § | |
| **VASSILIS E. KERTSIKOFF,** | § | |
| **VASILEIOS CHATZIELEFTHERIADIS,** | § | |
| **KONSTANTINOS** | § | |
| **CHATZIELEFTHERIADIS, IOANNIS** | § | |
| **ZILAKOS, ELENI KARASTAMATI,** | § | |
| **PANAGIOTIS KONSTANTARAS,** | § | |
| **EMMANOUIL ANDREOULAKIS,** | § | |
| **ELENI VANDOROU,** *in personam,* | § | |
| | § | |
| **Defendants.** | § | |

**VERIFIED COMPLAINT**

Plaintiffs ITHAKI GAS SHIPPING COMPANY ("Ithaki Gas", ELETSON

HOLDINGS, INC. ("Eletson Holdings"), ELETSON CORPORATION ("Eletson Corp."), and

ELETSON GAS LLC ("Eletson Gas") (collectively, "Plaintiffs") file this Verified Complaint

*in rem* against Defendant M/V ITHACKI ("Vessel") and *in personam* against the other

Defendants captioned above, stating admiralty and maritime claims within the meaning of

Rule 9(h) of the Federal Rules of Civil Procedure and Rule D of the Supplemental Rules for

Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule D"), and allege as follows:

## PARTIES

1.      Plaintiff Ithaki Gas is a Liberian entity with a registered address at 80 Broad Street, Monrovia, Liberia, 1000.

2.      Plaintiff Eletson Holdings is a Liberian entity with a registered address at 80 Broad Street, Monrovia, Liberia, 1000.

3.      Plaintiff Eletson Corp is a Liberian entity with a registered address at 80 Broad Street, Monrovia, Liberia, 1000.

4.      Plaintiff Eletson Gas is a Marshall Islands entity with a registered address at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands.

5.      On information and belief, the Vessel is a liquefied petroleum gas tanker currently present in or around the area of Point Comfort.

6.      On information and belief, the *in personam* Defendants are **former** shareholders, directors, and officers in Plaintiffs and other Eletson entities.

7.      On information and belief, Defendants Family Unity Trust Company, Glafkos Trust Company, Lassia Investment Company, Elafonissos Shipping Corporation, and Keros Shipping Corporation are Liberian entities with their registered addresses at 80 Broad Street, Monrovia, Liberia, 1000.

8.      On information and belief, Defendants Laskarina Karastamati, Vassilis E. Kertsikoff, Vasileios Chatzieleftheriadis, Konstantinos Chatzieleftheriadis, Ioannis Zilakos, Eleni Karastamati, Panagiotis Konstantaras, Emmanouil Andreoulakis, and Eleni Vandorou are individuals who reside or are domiciled in Greece.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1333(1) because this is a petitory and possessory action under Rule D.

10.     Petitory and possessory actions may be used to recover possession of seagoing vessels and are within the admiralty jurisdiction of the Court. *Hunt v. A Cargo of Petroleum Prod. Laden on Steam Tanker Hilda*, 378 F. Supp. 701, 703 (E.D. Pa. 1974), aff'd 515 F.2d 506 (3d Cir. 1975).

11.     This Court also has subject matter jurisdiction because this action asserts admiralty and maritime tort claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

12.     Such claims are based on the tort of conversion of maritime property (namely, the Vessel). This maritime action is to recover possession of the Vessel, with which the *in personam* Defendants have been and are unlawfully interfering.

13.     This Court also has the power to declare rights and liabilities pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and Supplemental Rule C(2)(c)[1], as the Vessel which is the subject of this action is currently or is believed soon to be within the District.

15.     Actions under Supplemental Rule D against three related vessels are currently pending in the District Court for the Southern District of Texas, with arrest warrants having been issued against the  M/V KITHNOS (case 2:25-cv-00042 in the Corpus Christi Division), the M/V KITHIRA (case 4:25-cv-00755 in the Houston Division) and M/V KINAROS (1:25-cv-00004 in the Brownsville Division).

---

[1] Rule D provides in relevant part that "the process shall be by a warrant of arrest of the vessel, cargo, or other property, and by notice in the manner provided by Rule B(2) to the adverse party or parties." In turn, arrest is governed by Rule C.

## FACTS

### A.  The Parties and Contracts Involved

16.     Plaintiff Ithaki Gas is a charterer of the Vessel, pursuant to a time charterparty[2] with Camarada Uno S.A. ("Camarada Uno") dated March 1, 2022 ("Time Charter") and is entitled to bring the present action. A copy of the Time Charter is attached hereto as Exhibit 1.

17.     Alternatively, for reasons set forth below and in the Motion for Issuance of Warrant for Arrest filed contemporaneously, the Time Charter is a concealed security interest. The economic reality is that Ithaki Gas is entitled to lawful possession of the Vessel, while Camarada Uno is in reality a creditor.

18.     On information and belief, the full terms of the Time Charter are identical or substantially the same as those of the time charterparty dated March 1, 2022 between Camarada Uno and Kithira Gas Shipping Company S.A. for M/V KITHIRA. A copy of the time charterparty for M/V KITHIRA is attached as Exhibit 2.

19.     Due to the failure of many of the Defendants to produce the full terms of the Time Charter in the U.S. bankruptcy proceedings, Plaintiffs rely on the terms of the contract for the M/V KITHIRA in this action and reserve the right to request production of the full Time Charter.

20.     On information and belief, the full terms of the Time Charter therefore provide among other matters as follows:

       a.  Hire of the Vessel from Camarada Uno to Plaintiff Ithaki Gas for a significant period of time, effectively for 13 years from 2020 until 2033.  *See* Exhibit 2 at 2, Clause 2(d).

---

[2] A time charterparty is an agreement pursuant to which shipowners provide the services of the ship and crew to the charterers for an agreed period of time. A long-term time charterparty however can be associated with a special finance or purchase arrangement.

b.  Camarada Uno is free of the basic obligations that shipowners have under regular time charterparties, as Clause 6(a) ("Owners to Provide") is struck out. *Id.* at 3.

c.  The "Conduct of Vessel's Personnel" clause is also struck out, which indicates that Camarada Uno does not employ the crew members on board the Vessel. *Id.* at 4, Clause 14.

d.  Instead, it is Plaintiff Ithaki Gas, not Camarada Uno, who selects the nationality of the crew members. *Id,* at 19, Clause 70.

e.  Similarly, several off-hire provisions dealing with crew matters are struck out, which would otherwise have deprived Camarada Uno of hire if its crew was deficient. *Id,* at 5-6, Clause 21.

f.  Camarada Uno does **not** guarantee the Vessel's speed and fuel consumption, as would have been typical for a shipowner under a regular time charterparty. *Id.* at 7-8 and 16, Clauses 24 and 55.

g.  The Oil Majors Clause is also struck out, which otherwise would have required Camarada Uno, were it a regular shipowner, to ensure the Vessel remains acceptable to oil majors and allowed Plaintiff Ithaki Gas to terminate the contract otherwise. *Id,* at 11, Clause 43.

h.  Clause 69 dealing with taxes is drafted in such a way as to make Plaintiff Ithaki Gas, not Camarada Uno, liable for all taxes – except those that apply to Camarada Uno's income. *Id,* at 19.

i.  Crucially, Plaintiff Ithaki Gas has a **purchase option for the Vessel**, exercisable upon payment of a lumpsum upon a sliding scale, the amount of which decreases as Ithaki Gas pays off its debt through charter hire. *Id,* at 24-25, Clause 83.

j.   For instance, if Plaintiff Ithaki Gas wished to repurchase the Vessel now, the initial purchase option would be around USD 21,960,000 as adjusted, while it would be merely USD 3,000,000 in 2033. This indicates that the Time Charter is de facto being used as a concealed security for a loan to Plaintiff Ithaki Gas, the true entity entitled to possession of the Vessel.

k.   If the Time Charter is terminated by Camarada Uno (e.g. for Plaintiff Ithaki's failure to pay hire), then Camarada Uno may either offer Plaintiff Ithaki to purchase the Vessel or it would be required to sell it, instead of keeping it to itself. *Id,* at 26-27, Clause 87.

l.   Camarada Uno required that Plaintiff Ithaki Gas provide an irrevocable guarantee of payment from third parties like Plaintiff Eletson Gas, which reflects security anxiety of Camarada Uno, indicating that the Time Charter is intended for security purposes. Exhibit 1, at 7.

21.   All shares of Plaintiff Ithaki Gas are owned by Plaintiff Eletson Gas.

22.   In turn, all of common shares of Plaintiff Eletson Gas are owned by Plaintiff Eletson Holdings.

23.   On information and belief, the immediate shareholders in Plaintiff Eletson Holdings used to be five of the *in personam* Liberian Defendants, namely, the entities called Family Unity Trust Company, Glafkos Trust Company, Lassia Investment Company, Elafonissos Shipping Corporation and Keros Shipping Corporation.

24.   On information and belief, these five Defendants are ultimately owned and/or controlled by five principal families, which include the families of other *in personam* Defendants, namely, the families of Laskarina Karastamati, Vassilis Kertsikoff, and Vasilis Hadjieleftheriadis, each of whom together with further individual Defendants also held various

director and officer positions in the Eletson entities (collectively "<u>Former Shareholders,</u> <u>Directors & Officers</u>").

25.     Plaintiff Eletson Holdings also owns all shares of Plaintiff Eletson Corp.

26.     In turn, Plaintiff Eletson Corp. is performing the functions of a manager of the Vessel, pursuant to the relevant management agreement.

27.     The current position as regards ownership of the Eletson group is discussed in more detail below. To summarize, in breach of multiple U.S. Bankruptcy Court orders and despite several motions for sanctions and/or contempt, the Defendants who are Former Shareholders, Directors & Officers of Plaintiff Eletson Holdings are obstructing the court-ordered transfer of ownership in Plaintiff Eletson Holdings (and by extension of other Eletson subsidiaries, such as Plaintiffs Ithaki Gas, Eletson Gas, and Eletson Corp.) to the new shareholders and management, as well as interfering with the management and possession of the Vessel in question.

B.  **The Bankruptcy of Plaintiff Eletson Holdings and Termination of Its Old** **Management**

28.     On March 7, 2023, a number of creditors petitioned for involuntary bankruptcy of Plaintiff Eletson Holdings (case number 23-10322-jpm pending in the U.S. Bankruptcy Court for the Southern District of New York) ("<u>U.S. Bankruptcy Court</u>"). On September 25, 2024, the U.S. Bankruptcy Court entered an order granting the request by Plaintiff Eletson Holdings to convert the involuntary bankruptcy to a voluntary proceeding under Chapter 11 of the Bankruptcy Code.

29.     On October 25 and November 4, 2024, the U.S. Bankruptcy Court issued its decision and order confirming the Chapter 11 plan proposed by the creditors ("Chapter 11 Decision", "Chapter 11 Order", and "Chapter 11 Plan", respectively). True and correct copies thereof are attached as <u>Exhibits 3, 4 and 5</u>, respectively.

30. The Chapter 11 orders provided for funding of Plaintiff Eletson Holdings through a US$53.5 million equity rights offering. Exhibit 3 at 39-41 § K.1; Exhibit 5 at 14, ¶1.129.

31. In accordance with this equity rights offering, holders of general unsecured claims received subscription rights to purchase up to 75% of the shares in the reorganized Plaintiff Eletson Holdings. *Id.*

32. These shares were extremely valuable, as Plaintiff Eletson Holdings is an entity which ultimately operates and/or controls a fleet of at least sixteen (16) vessels, through structures similar to that for Ithaki Gas and the Vessel in the present action.

33. The effect of the Chapter 11 Plan, Decision, and Order is that the Defendants ceased being shareholders, directors or officers in Plaintiff Eletson Holdings and, by extension, in Plaintiffs Ithaki Gas, Eletson Corp and Eletson Gas.

34. This is the combined result of:

   a. Section 10.1 of the Chapter 11 Plan making the plan binding on all parties on the Effective Date, which occurred on November 19, 2024. Exhibit 5 at 45, §10.1; Exhibit 6 (Notice of Occurrence of the Effective Date).

   b. Section 5.4 of the Chapter 11 Plan mandating that on the Effective Date, all existing stock would be cancelled. Exhibit 5 at 28-29, §5.4.

   c. Section 5.8 providing for the issuance of new shares in accordance with the terms of the Chapter 11 Plan. *Id* at 30-31, §5.8.

   d. Section 5.10(c) mandating that all existing members of the governing bodies of each "Debtor" (which includes Plaintiff Eletson Holdings) would be "deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor on the Effective Date." *Id* at 32, §5.10(c).

e. Section 5.10(a) providing for the appointment of the new board of directors. *Id*, §5.10(a).

f. Crucially, Section 5.2(c) providing that "on the Effective Date, all property in each Estate, including all Retained Causes of Action, and any property acquired by any of the Debtors, **including interests held by the Debtors in their respective non-Debtor direct and indirect subsidiaries and Affiliates shall vest in Reorganized Holdings…**" *Id* at 28, §5.2(c) (emphasis added).

g. It is noted that "Reorganized Holdings" is defined in the Chapter 11 Plan as Plaintiff Eletson Holdings after it emerged from the Chapter 11 reorganization, with the new shareholders, directors, and officers. *Id.* at 14, §1.126.

h. Section 5.2(c) further providing that "[o]n and after the Effective Date, except as otherwise provided in this Plan, Reorganized Holdings may operate its business and may use, acquire, or dispose of property and maintain, prosecute, abandon, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court . . ." *Id* at 28, §5.2(c).

i. The Chapter 11 Order is the order of the U.S. Bankruptcy Court which confirms the Chapter 11 Plan and makes it operative in all respects, including with regard to vesting of assets (paragraph 7) and its immediate binding effect (paragraph 19). Exhibit 4 at 22, ¶7 and at 27-28, ¶19.

35. On or about the Effective Date—November 19, 2024—consistent with the Chapter 11 Plan confirmed by the U.S. Bankruptcy Court, the following actions were taken to implement it:

a. Reorganized Plaintiff Eletson Holdings issued shares to the new holders.

b. The shares of the Defendants who were former shareholders were cancelled.

c.  The new shareholders in Plaintiff Eletson Holdings removed all former directors of that Plaintiff entity and appointed new directors. Copies of the shareholders' and the new board's consent are attached as Exhibits 7 and 8, respectively.

d.  Plaintiff Eletson Holdings, being the sole shareholder in Plaintiff Eletson Corp, removed all former directors in that entity and appointed a new board. Copies of the stockholders' and the new board's consent are attached as Exhibits 9 and 10, respectively.

36.    On November 29, 2024, Plaintiff Eletson Holdings as the sole common shareholder in Plaintiff Eletson Gas removed all former directors of that Plaintiff entity which had been previously appointed using the common shares and appointed new directors instead.

37.    Further, the board of directors of Ithaki Gas was likewise reconstituted. Copies of the relevant shareholders' consents and minutes are attached as Exhibit 11.

38.    When considering the appeal of the Confirmation Decision, the United States District Court for the Southern District of New York (case number 1:23-cv-08672-LJL, *In re Eletson Holdings Inc., et al.*) ruled that the new board of directors of Plaintiff Eletson Holdings is to be recognized and has the ability to act on behalf of Eletson Holdings, under section 5.2 of the Chapter 11 Plan. A copy of the bench ruling is attached at Exhibit 12 at [31:9-19] and the copy of the relevant stipulation and agreement to dismiss the appeal is attached at Exhibit 13.

39.    Multiple further decisions from the U.S. Bankruptcy Court and the District Court recognized that the Former Directors & Officers and the shares of Former Shareholders in Plaintiff Eletson Holdings were terminated, that new shares were issued to the new shareholders and that the new board has authority to act on behalf of that Plaintiff (including in decisions issued by the U.S. Bankruptcy Court in hearings on January 24 and February 20, 2025, and in the decision issued by the District Court in a hearing on February 14, 2025).

C. **Refusal of Old Management of Eletson Holdings to Comply with U.S. Court Orders**

40.     In defiance of the Chapter 11 Order, Chapter 11 Decision, and Chapter 11 Plan (as well as the rulings referred to above), the Former Management of Plaintiff Eletson Holdings, refuses to comply with these U.S. court orders and implement the transfer of ownership in Plaintiff Eletson Holdings and, by extension, in Plaintiffs Ithaki Gas, Eletson Gas, and Eletson Corp.

41.     On November 25, 2024, the reorganized Eletson Holdings filed an emergency motion for sanctions before the U.S. Bankruptcy Court against the Former Shareholders, Directors & Officers, and against their counsel, for actively working to obstruct the Chapter 11 Plan, which went effective on November 19, 2024.  A copy of the sanctions motion is attached at Exhibit 14. This has now been granted.

42.     Among other instances of clear and intentional defiance of the U.S. Bankruptcy Court orders, such Defendants:

     a.   continue to obstruct the registration of the cancellation of shares of the older shareholders and issuance of shares to the new shareholders and appointment of the board of Plaintiff Eletson Holdings and completion of many other associated formalities in Liberia;

     b.   continue to represent themselves as and act as purported shareholders, directors and officers of Plaintiff Eletson Holdings and other Eletson subsidiaries;

     c.   appointed a "provisional" board of directors in Greece for Plaintiff Eletson Holdings, despite the fact that pursuant to the Chapter 11 Plan, on the Effective Date, each member of the "provisional" board was deemed to resign—post-Effective Date, this "provisional board" has taken unauthorized actions in the U.S., Liberia, and Greece; and

     d.   continue to unlawfully insist that the U.S. Bankruptcy Court orders must be recognized in Liberia and Greece through a separate procedure through vexatious proceedings in those countries before the relevant Defendants would agree to comply with the U.S. Bankruptcy Court's orders (which already have binding power).

43.    Such actions by Defendants in breach of the U.S. Bankruptcy Court's Orders result in Plaintiffs being deprived of any possession and use of the Vessel and blatantly interfere with Plaintiffs' possessory rights in the Vessel.

44.    As a result of such actions, Plaintiffs and their new shareholders and directors have to date been unable to receive any income from the use of the Vessel (or indeed any other ships in the Eletson-controlled fleet), replace the crews, or exercise any of their rights as, among others, time charterers, operators, and managers of the Vessel.

45.    It is clear that Defendants who are Former Shareholders, Directors & Officers of Eletson entities actively seek to undermine the U.S. Bankruptcy Court orders by obstructing the implementation of such orders.

46.    This is despite sections 1141 and 1142 of the Bankruptcy Code, as well as section 5.4 of the Chapter 11 Plan, which requires cancellation of the old shareholdings without further notice to or order of the Court, and section 7.2 of the Chapter 11 Order, which vests into Eletson Holdings all interests in its subsidiaries, together with section 19 providing for immediate binding effect of the Chapter 11 Plan.

47.    In fact, this flies in the face of the express words of the Chapter 11 Plan itself, which provides again as follows in its section 5.2(c):

all property in each Estate, including all Retained Causes of Action, and any property acquired by any of the Debtors, **including interests held by the Debtors in their respective non-Debtor direct and indirect subsidiaries**

**and Affiliates shall vest in Reorganized Holdings**, free and clear of all

Liens, Claims, charges, or other encumbrances…

Exhibit 5, at 28, § 5.2.(c) (emphasis added).

48.     Indeed, on January 24, 2025, the U.S. Bankruptcy Court held a hearing in which it granted reorganized Eletson Holdings' motion for sanctions against various allegedly violating parties—including Eletson's former counsel and former shareholders, directors and officers—for actively working to obstruct the Chapter 11 Plan, which went effective on November 19, 2024.

49.     On January 29, 2024, the U.S. Bankruptcy Court granted that motion. True and correct copies of the order and hearing transcript are attached hereto as Exhibit 15. A notice of appeal has been filed against that order.

50.     In granting Plaintiff Eletson Holdings' sanctions motion, the U.S. Bankruptcy Court held that under the Chapter 11 Plan and Chapter 11 Order, the petitioning creditors validly obtained control of Plaintiff Eletson Holdings, the former Eletson Holdings board ceased to exist, and the Chapter 11 Order recognizes the new board of reorganized Plaintiff Eletson Holdings (as contemplated under the Chapter 11 Plan documents) and gives it authority to act on behalf of reorganized Plaintiff Eletson Holdings. Exhibit 15, at 26:5-25, 27:1-5, 43:10-15.

51.     The U.S. Bankruptcy Court further directed the Former Shareholders, Directors, & Officers, as well as their counsel and their related parties and affiliates, to comply with the Chapter 11 Plan and the Chapter 11 Order and to "take all steps reasonably necessary" in implementing the Plan, including by updating the relevant corporate governance documents in Liberia within seven days of service the order. Exhibit 15, at ¶2.  Service was completed on January 29 and 30, 2025.

52.     The Former Shareholders, Directors & Officers failed to comply with the U.S. Bankruptcy Court order dated January 29, 2025 within the above deadline or at all.

53.     Accordingly, on February 6, 2025, Plaintiff Eletson Holdings filed yet another motion for sanctions against these Former Shareholders, Directors & Officers, seeking a finding of contempt, coercive monetary penalties in the amount of USD 25,000 per day and costs. A true and correct copy of the motion for sanctions dated February 6, 2025 excluding voluminous exhibits, is attached at <u>Exhibit 16</u>.

54.     Indeed, in an oral decision issued on February 20, 2025 and a formal order issued on February 27, 2025, the U.S. Bankruptcy Court found the Former Shareholders and many of the Former Directors & Officers in contempt of court as a result of their violations of the Chapter 11 Chapter 11 Plan, Chapter 11 Order, and three further decisions of the U.S. Bankruptcy Court. True and correct copies of the relevant pages from the February 20, 2025 decision and the February 27, 2025 order are attached as <u>Exhibit 16 and 17</u>, respectively.

55.     Further motions for sanctions are currently pending before the U.S. Bankruptcy Court, as the relevant parties still have failed or refused to comply with that Court's decisions.

**D.  <u>Old Eletson Management's Evasive Action</u>**

56.     Shortly after the approved Chapter 11 Plan became effective, Defendants took various dissipatory steps, steps including redirecting time charter hire payments in relation to at least the vessels called M/V FOURNI and KASTOS away from a bank account owned by an Eletson group treasury company called EMC Investment Corporation.

57.     On information and belief, such bank account is held with Berenberg Bank, which placed on informal freeze on that account following the entry into effect of the Chapter 11 Plan.

58.     Further, under threat of withdrawal of the two above ships made to their time charterers, Defendants siphoned the hire funds away on or about January 10, 2025.

59.     As set forth below in more detail, Defendants also changed the management of several other vessels in the Eletson fleet, such as M/V ANAFI, NISYROS and TILOS, from Plaintiff Eletson Corp, which is now under control of the new management following the Chapter 11 Plan.

**E.  Old Eletson Management's Evasion of Texas Arrest of M/V KINAROS**

60.     On January 7, 2025 at 12:46 PM CST, consistently with the implementation of the U.S. Bankruptcy Court's Chapter 11 orders, Plaintiffs – including a related entity called Kinaros Special Maritime Enterprise – filed an action to arrest another vessel from the Eletson fleet called M/V KINAROS (case 1:25-cv-00004, currently pending before the U.S. District Court for the Southern District of Texas, Brownsville Division).

61.     At the time, M/V KINAROS was scheduled to load 300,000 barrels of oil / petroleum products at the liquid cargo dock in Brownsville, Texas. A true copy of the Port of Brownsville vessel arrival chart dated January 6, 2025 is attached as Exhibit 18.

62.     However, at 20:37 GMT (or 13:37 CST) and less than one hour after the arrest action was filed on the Court's docket, M/V KINAROS suddenly stopped steaming towards Brownsville and started drifting outside of the Port of Brownsville and critically, outside of the jurisdictional boundaries of the Southern District of Texas. True and correct copies of screenshots showing M/V KINAROS's movements at the time are attached as Exhibit 19.

63.     On the same day, Judge Rolando Olvera granted the Plaintiffs' Emergency *Ex Parte* Motion for Issuance of a Warrant of Arrest, issued an order authorizing the arrest of the Vessel and an arrest warrant was issued by the District Clerk. True copies of the order and the warrant are attached as Exhibits 20 and 21.

64.     M/V KINAROS never arrived at its original destination in the Port of Brownsville, and after a period of drifting in the Gulf of Mexico off of the U.S. and Mexican coastlines, the vessel sailed towards Jamaica. This was despite the messages sent by Plaintiffs

to the Master and some of the individual Defendants ordering the Vessel to proceed to Brownsville. True copies of the relevant messages are attached at Exhibit 22.

65.     On information and belief, Defendants who are Former Shareholders, Directors & Officers became aware of the arrest action filed by Plaintiffs against M/V KINAROS and ordered the master of M/V KINAROS to avoid entering the Port of Brownsville and/or the Southern District of Texas, generally.

66.     These steps are a clear evasion of the arrest order issued in case 1:25-cv-00004, currently pending before the U.S. District Court for the Southern District of Texas, Brownsville Division.

67.     The relevant Defendants are evading legal process in the U.S. where they know they will be subject to the reality of the decisions of the U.S. Bankruptcy Court, as well as the arrest warrant issued against M/V KINAROS.

68.     Further, these actions violate the injunction on interference with implementation and consummation of the Chapter 11 Plan, under paragraph 12 of the Chapter 11 Order, and also the injunction on "interfering with any distributions and payments contemplated by the Plan" under that same paragraph, as issued by the U.S. Bankruptcy Court.  Exhibit 4 at 25, ¶12.

69.     This is because as the U.S. Bankruptcy Court recognized in its Chapter 11 Decision: "all of the SME revenues will also be given to creditors under both the PC Plan and the PC Alternative Plan, because Pach Shemen itself is a creditor, and Pach Shemen will obtain the equity of the Debtors under either Petitioning Creditor plan." Exhibit 4 at 75; *In re Eletson Holdings Inc.*, 664 B.R. 569, 624 (Bankr. S.D.N.Y 2024).

70.     "PC Plan" is the Chapter 11 Plan which the U.S. Bankruptcy Court confirmed; "Pach Shemen" is one of the new shareholders in Plaintiff Eletson Holdings, while "SME revenues" refers to hire or freight that should be received by entities like Kinaros SME in the Eletson group who are charterers of vessels.

71.     The evasion of arrest by M/V KINAROS, which was on information and belief orchestrated by Defendants who are Former Shareholders, Directors & Officers of Eletson Entities, has been brought to the attention of the U.S. Bankruptcy Court.

**F.   Old Eletson Management's Attempted Evasion of Arrest of M/V KIMOLOS**

72.     The M/V KIMOLOS was arrested by Plaintiffs Eletson Holdings and Eletson Corp, as well as Kimolos II Special Maritime Enterprise at Bahia Las Minas, Panama, at about 3am on Monday, February 3, 2025.

73.     On information and belief, as the M/V KIMOLOS was approaching Panama, the Defendants took multiple steps to avoid arrest and mislead the plaintiffs in the Panamanian proceedings.

74.     On information and belief, on or about January 31, 2025, the Defendants deliberately spoofed the publicly available website for vessel tracking www.marinetraffic.com and/or otherwise interfered with the AIS reporting[3] system of the M/V KIMOLOS, in order to misrepresent the M/V KIMOLOS as being at the Balboa anchorage on the Pacific side of the Panama Canal, when in reality the M/V KIMOLOS was on that day still sailing through the Caribbean Sea towards Panama.  True and correct copies of screenshots from Marine Traffic dated January 31, 2025, are attached as Exhibit 23.

75.     On information and belief, the Defendants turned off or otherwise interfered with the AIS reporting of the M/V KIMOLOS on its voyage to Panama. *Id,* at 4 (indicating that that vessel's position has not been reported for over 11 hours).

76.     On information and belief, in the days leading up to the arrest, the Defendants misrepresented the estimated time of arrival of the M/V KIMOLOS to the Panama Canal Authority and/or other authorities in Panama, stating that that vessel would arrive at the Canal

---

[3] The automatic identification system (AIS) is an automatic tracking system that uses transceivers on ships and is used by vessel traffic services (VTS) to report the vessels' location in real time.

at or about 20:00 on February 2, 2025 and also indicating that the M/V KIMOLOS would transit the Canal. A copy of the arrival chart dated February 2, 2025 is attached at <u>Exhibit 24.</u>

77.     On information and belief, the Defendants did not intend the M/V KIMOLOS to transit the Panama Canal at all.

78.     In fact, at or about 22:00 on February 2, 2025, the Vessel arrived with a gas cargo at Bahia Las Minas, Panama (which is a port on the Atlantic coast of Panama that can be accessed without transiting the Canal and is not part of the Canal zone).

79.     On information and belief, the Defendants misrepresented the position of the M/V KIMOLOS, its destination and its ETA, in order to avoid arrest of the M/V KIMOLOS by Plaintiffs in Panama.

G. **<u>The Stay Regarding the Preferred Shares in Plaintiff Eletson Gas and the Defendants' Blatant Violations of That Stay</u>**

80.     As Plaintiffs discovered recently, Defendants took more brazen steps to violate further orders of the U.S. Bankruptcy Court, which directly relate to the possession and management of the Vessels in issue here and also affect other ships in the Eletson fleet.

81.     On April 17, 2023, the U.S. Bankruptcy Court issued a stay concerning the preferred shares in Plaintiff Eletson Gas, which had been subject of an arbitration and a JAMS arbitration award between Levona Holdings, Ltd (one of the creditors in the bankruptcy who held these preferred shares) and Plaintiffs Eletson Holdings and Eletson Corp. (common shareholders in Eletson Gas who were both then under the control of Former Shareholders, Directors & Officers), as well as other related parties (the "<u>Stay Order</u>"). A true copy of the Stay Order is attached as <u>Exhibit 25</u>.

82.     The Stay Order provided in the relevant part:

"Any Arbitration Award, whether in favor of any Arbitration Party, shall be stayed pending further order of the Bankruptcy Court on a motion noticed following the issuance of the Arbitration Award. For avoidance of

doubt, no Arbitration Party shall transfer, dispose of, transact in, hypothecate, encumber, impair or otherwise use any such Arbitration Award or any asset or property related thereto absent a further order of this Court."

*Id* at ¶ 4.

83.    The Stay Order sought to preserve the status quo in relation to the preferred shares in Plaintiff Eletson Gas, the arbitration award concerning them, and also the possession and management of ships operated through Plaintiff Eletson Gas (including the Vessel in this action).

84.    However, the Defendants in this action, purporting to act for or on behalf of Plaintiffs Eletson Holdings, Eletson Corp. and Eletson Gas even after the U.S. Bankruptcy Court confirmed the Chapter 11 Plan, blatantly violated the Stay Order:

a. By replacing Plaintiff Eletson Corp. as the manager of a large number of Eletson fleet ships operated through Plaintiff Eletson Gas during the fall of 2024 and most recently in January 2025 (including M/V ANAFI, NISYROS and TILOS), and depriving Plaintiff Eletson Corp. of the relevant income under its management agreements. Copies of Equasis reports showing the changes of managers are attached as Exhibit 26.[4]

b. By purporting to change Eletson Gas's share registry and board of director composition to reflect the relief Defendants believe was granted in the award concerning the preferred shares. They made those purported changes on February 26, 2024, but concealed their actions from the U.S. Bankruptcy Court for nearly a year, during which they dissembled in response to more than twenty

---

[4] Equasis, or the "Electronic Quality Shipping Information System" is an online database which compiles management, insurance, and safety related information on ships from public and private sources and makes them available on the Internet. *See, https://www.equasis.org/EquasisWeb/public/About?fs=HomePage&P_ABOUT=MainConcern.html*

requests for confirmation that no such violations had occurred. The U.S. Bankruptcy Court learned about this issue for the first time on January 16, 2025. A true copy of Levona's motion to enforce the stay and impose sanctions filed before the U.S. Bankruptcy Court against many of the Defendants is attached as Exhibit 27.

c. By filing a new litigation in England on December 16, 2024, in which the Defendants purporting to act on behalf of Plaintiffs Eletson Holdings and Eletson Corp., are explicitly seeking enforcement of the preferred shares award. Again, the existence of these English proceedings was first made known to the U.S. Bankruptcy Court on January 16, 2025. *Id.*

85.    In light of these obvious and flagrant breaches of the U.S. Bankruptcy Court's orders, Plaintiffs bring the present action under Rule D in order to preserve the status quo under the Stay Order and other orders, and ensure that Plaintiff Eletson Corp remains acting as a manager of the Vessel, Plaintiff Ithaki Gas remains its lawful charterer, while the revenues generated by Plaintiff Ithaki Gas are given to the new and lawful shareholders of Plaintiff Eletson Holdings, as the Chapter 11 Decision provides, and possession of the Vessel itself is returned to Plaintiffs.

86.    On information and belief, Former Shareholders, Directors & Officers continue to engage in misleading tactics to avoid arrest of the Vessel in question.

87.    On information and belief, the Vessel is currently in or near the Port of Point Comfort. More specifically, on information and belief, the Vessel is currently at anchor at the Point Comfort anchorage and expected to proceed imminently to the Liquid Product Dock North for brief cargo operations—perhaps as few as twenty-four hours—before departing to an unknown destination.

## COUNT I
## Rule D Possessory and Petitory Claim for the Vessel

88.     Paragraphs 1 through 87 of this Verified Complaint are repeated and realleged as if the same were set forth here at length.

89.     A controversy has arisen regarding Plaintiffs' immediate right to possession of the Vessel and exercise of other rights granted to Plaintiffs by the Time Charter and the Management Agreement.

90.     Plaintiffs are the lawful time charterers, operators and managers of the Vessel.

91.     However, the Vessel is currently in the de facto possession and control of Defendants purporting to act through and on behalf of the Eletson entities and in clear and intentional violation of the U.S. Bankruptcy Court orders.

92.     Defendants purporting to act through and on behalf of the Eletson entities continue to deprive Plaintiffs of any possession and use of the Vessel and blatantly interfere with Plaintiffs' possessory rights in the Vessel.

93.     As a result, Plaintiffs are unable to exercise any of their rights as time charterers, operators, and managers of the Vessel.

94.     On information and belief, the Vessel is currently in or near Point Comfort. More specifically, on information and belief, the Vessel is currently or near the Liquid Cargo Dock North in Point Comfort and there is a real risk that it may depart shortly—perhaps in as few as twenty-four hours--to an unknown destination.

95.     Pursuant to Rule D, Plaintiffs are entitled to bring an action for possession of the Vessel.

96.     Defendants continue to possess the Vessel unlawfully, to the detriment of Plaintiffs, causing damage to Plaintiffs.

97.     Defendants purporting to act through and on behalf of the Eletson entities do not hold either legal title or a legal possessory interest in the Vessel.

98.     Plaintiffs therefore request a warrant for the arrest of the Vessel pursuant to Rule D, as well as immediate orders from this Court (i) declaring their right to recover possession of the Vessel, (ii) ordering that Defendants deliver the Vessel into Plaintiffs' possession and (iii) ordering that Defendants in all respects refrain from interfering with the use and possession by Plaintiffs of the Vessel (including by an injunction barring Defendants from interfering with Plaintiffs' management and operation of the Vessel).

## COUNT II
## Conversion of Maritime Property

99.     Paragraphs 1 through 87 of this Verified Complaint are repeated and realleged as if the same were set forth here at length.

100.     Plaintiffs are the lawful time charterers, operators and managers of the Vessel and have the unconditional right to take possession of the Vessel.

101.     Defendants purporting to act through and on behalf of the Eletson entities have unlawfully and intentionally exercised dominion and control over the Vessel on navigable waters without authorization and inconsistently with Plaintiffs' rights.

102.     Defendants purporting to act through and on behalf of the Eletson entities appropriated the Vessel on navigable waters for their own use and gain.

103.     As a result of the foregoing, Plaintiffs have suffered damages in excess of $3,000,000 due to the inability to use the Vessel.

**WHEREFORE**, Plaintiffs pray for relief as follows:

A.  That a Warrant of Arrest be issued in due form of law and according to the practice of this Honorable Court in cases of admiralty and maritime jurisdiction against the Vessel in or near Point Comfort, pursuant to Rule D for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure;

B.  That the Vessel be seized when found within this District pursuant to Rule D of the Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure;

C.  That process in due form of law according to the practices of this Honorable Court in causes of admiralty and maritime jurisdiction be issued against Defendants;

D.  That an order be issued that Plaintiffs are entitled to possessory rights of the Vessel and a commensurate order compelling Defendants to release the Vessel to Plaintiffs, respectively;

E.  That the Court enter judgment in favor of Plaintiffs and enter an order confirming Plaintiffs' right to possession of the Vessel;

F.  That judgment be entered in Plaintiffs' favor and against Defendants, jointly and severally, in an amount to be proven in these proceedings, plus costs, expenses and interest;

G.  That an injunction be issued prohibiting Defendants from interfering with Plaintiffs' possession, management and operation of the Vessel;

H.  That Plaintiffs have such other and further relief as in law and justice they may be entitled to receive, including attorneys' fees.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By:   /s/ Andrew R. Nash
Ivan M. Rodriguez
Texas Bar No.: 24058977
SDTX ID: 45566982
Andrew R. Nash
Texas Bar No.: 24083550
SDTX ID: 1690806
Kenderick M. Jordan
Texas Bar No.: 24145378
SDTX ID: 3905171
910 Louisiana Street, Suite 4300
Houston, Texas 77002

Telephone: 713-626-1386
Telecopier: 713-626-1388
Email:  ivan.rodriguez@phelps.com
        andy.nash@phelps.com
        kenderick.jordan@phelps.com

**ATTORNEYS FOR PLAINTIFF**

**OF COUNSEL**

**FLOYD ZADKOVICH (US) LLP**

Luke F. Zadkovich
Edward W. Floyd
Filipp A. Vagin
luke.zadkovich@floydzad.com
ed.floyd@floydzad.com
philip.vagin@floydzad.com
(917) 868 1245
(917) 999 6914
33 East 33rd Street, Suite 905
New York, NY, 10016

*PENDING PRO HAC VICE ADMISSION*

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, Leonard J Hoskinson declares as follows:

I am CEO of Plaintiff Eletson Corporation.

I have read the foregoing Verified Complaint and know the contents thereof.

I verify that I believe the allegations contained therein to be true to my own knowledge, except as to matters stated to be upon information and belief, and as to those matters I believe them to be true.

The grounds for my belief are based upon my personal knowledge gained during the course of my professional duties as CEO of Plaintiff and my review of and familiarity with correspondence and other relevant documents, including the exhibits to the foregoing Verified Complaint.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 6th day of March 2025, in Florida, United States.

*LEONARD Hoskinson*
_____

Leonard J Hoskinson

# 20250306_ITHACKI_Eletson Corp Verification

Final Audit Report                                                    2025-03-06

| | |
|---|---|
| Created: | 2025-03-06 |
| By: | Carlos Noriega (carlos.noriega@floydzad.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAKZUD96GUoY9HyTqmf_xi82L13gJYOVPB |

## "20250306_ITHACKI_Eletson Corp Verification" History

📄 Document created by Carlos Noriega (carlos.noriega@floydzad.com)
2025-03-06 - 6:04:08 PM GMT

✉ Document emailed to Leonard Hoskinson (lhoskinson@ravenship.us) for signature
2025-03-06 - 6:04:11 PM GMT

📄 Email viewed by Leonard Hoskinson (lhoskinson@ravenship.us)
2025-03-06 - 6:44:08 PM GMT

✎ Document e-signed by Leonard Hoskinson (lhoskinson@ravenship.us)
Signature Date: 2025-03-06 - 6:44:32 PM GMT - Time Source: server

✅ Agreement completed.
2025-03-06 - 6:44:32 PM GMT

Adobe Acrobat Sign

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, Leonard J Hoskinson declares as follows:

I am CEO of Plaintiff Eletson Gas LLC.

I have read the foregoing Verified Complaint and know the contents thereof.

I verify that I believe the allegations contained therein to be true to my own knowledge, except as to matters stated to be upon information and belief, and as to those matters I believe them to be true.

The grounds for my belief are based upon my personal knowledge gained during the course of my professional duties as CEO of Plaintiff and my review of and familiarity with correspondence and other relevant documents, including the exhibits to the foregoing Verified Complaint.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 6th day of March 2025, in Florida, United States.

*LEONARD Hoskinson*
_____

Leonard J Hoskinson

# 20250306_ITHACKI_Eletson Gas LLC Verification

Final Audit Report                                                                2025-03-06

| | |
|---|---|
| Created: | 2025-03-06 |
| By: | Carlos Noriega (carlos.noriega@floydzad.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA4ZCZ_G_EDb37wxdLSrGgrc-J3djPcqwQ |

## "20250306_ITHACKI_Eletson Gas LLC Verification" History

Document created by Carlos Noriega (carlos.noriega@floydzad.com)
2025-03-06 - 6:05:13 PM GMT

Document emailed to Leonard Hoskinson (lhoskinson@ravenship.us) for signature
2025-03-06 - 6:05:16 PM GMT

Email viewed by Leonard Hoskinson (lhoskinson@ravenship.us)
2025-03-06 - 6:44:45 PM GMT

Document e-signed by Leonard Hoskinson (lhoskinson@ravenship.us)
Signature Date: 2025-03-06 - 6:45:09 PM GMT - Time Source: server

Agreement completed.
2025-03-06 - 6:45:09 PM GMT

Adobe Acrobat Sign

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, Adam Warren Spears declares as follows:

I am CEO of Plaintiff Eletson Holdings Inc.

I have read the foregoing Verified Complaint and know the contents thereof.

I verify that I believe the allegations contained therein to be true to my own knowledge, except as to matters stated to be upon information and belief, and as to those matters I believe them to be true.

The grounds for my belief are based upon my personal knowledge gained during the course of my professional duties as CEO of Plaintiff and my review of and familiarity with correspondence and other relevant documents, including the exhibits to the foregoing Verified Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 6th day of March 2025, in Toronto, Canada.

*Adam Spears*
Adam Spears (Mar 6, 2025 13:00 EST)

Adam Warren Spears

# 20250306_ITHACKI_Eletson Holdings Inc. Verification

Final Audit Report                                                      2025-03-06

| | |
|---|---|
| Created: | 2025-03-06 |
| By: | Carlos Noriega (carlos.noriega@floydzad.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAguhdoULIhajqCETYwH6qpSiKEDWheIt5 |

## "20250306_ITHACKI_Eletson Holdings Inc. Verification" History

📄 Document created by Carlos Noriega (carlos.noriega@floydzad.com)
2025-03-06 - 5:59:08 PM GMT

📧 Document emailed to Adam Spears (adam.spears@eletsonholdings.com) for signature
2025-03-06 - 5:59:11 PM GMT

📄 Email viewed by Adam Spears (adam.spears@eletsonholdings.com)
2025-03-06 - 5:59:22 PM GMT

✍️ Document e-signed by Adam Spears (adam.spears@eletsonholdings.com)
Signature Date: 2025-03-06 - 6:00:36 PM GMT - Time Source: server

✅ Agreement completed.
2025-03-06 - 6:00:36 PM GMT

Adobe Acrobat Sign

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, Leonard J Hoskinson declares as follows:

I am the director and CEO of Plaintiff Ithaki Gas Shipping Company.

I have read the foregoing Verified Complaint and know the contents thereof.

I verify that I believe the allegations contained therein to be true to my own knowledge, except as to matters stated to be upon information and belief, and as to those matters I believe them to be true.

The grounds for my belief are based upon my personal knowledge gained during the course of my professional duties as the director and CEO of Plaintiff and my review of and familiarity with correspondence and other relevant documents, including the exhibits to the foregoing Verified Complaint.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 6th day of March 2025, in Florida, United States.

*LEONARD Hoskinson*

Leonard J Hoskinson

# 20250306_ITHACKI_Ithaki Gas Shipping Company Verification

Final Audit Report                                                    2025-03-06

| | |
|---|---|
| Created: | 2025-03-06 |
| By: | Carlos Noriega (carlos.noriega@floydzad.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAjlrvnDA9O-VqJvGwf1bK1Uz22s3enK7W |

## "20250306_ITHACKI_Ithaki Gas Shipping Company Verification" History

Document created by Carlos Noriega (carlos.noriega@floydzad.com)
2025-03-06 - 6:02:20 PM GMT

Document emailed to Leonard Hoskinson (lhoskinson@ravenship.us) for signature
2025-03-06 - 6:02:24 PM GMT

Email viewed by Leonard Hoskinson (lhoskinson@ravenship.us)
2025-03-06 - 6:43:19 PM GMT

Document e-signed by Leonard Hoskinson (lhoskinson@ravenship.us)
Signature Date: 2025-03-06 - 6:43:52 PM GMT - Time Source: server

Agreement completed.
2025-03-06 - 6:43:52 PM GMT

Adobe Acrobat Sign